Our final case for argument today is 23-1527, In Re. Foster. Good morning. If it may please the Court, I'm Thomas D. Foster. I represent the appellant here, Thomas D. Foster, APC. Thomas D. Foster, the appellant, is actively involved in content creation for educational and entertainment purposes, for example, GeorgeMagazine.com and StarfleetSpaceAcademy.com. And this is part of the important trademark that they're seeking, seeking trademark for U.S. Space Force for a broad range of consumer goods. And these are important to acquire. Okay, well, I mean, that's all great. But why is the office wrong in having concluded that your trademark falsely suggests a connection with a person or an institution, in this case that being the United States Space Force? I can answer that. I note that the trademark office had difficulty identifying one single person throughout their different office actions. First, it was President Trump and the United States government. Then they added the military. And then it came down, finally, to the United States government and its military, the U.S. Space Force, which was created two years later, in 2019, after the application was filed. And I'll also say there's a similar instance where trademarks have been granted for government agencies. I give an example, Top Gun, which was surprisingly at the same place where President Trump announced his desire for a space force, which was maybe taken as a joke by the public. But there, Top Gun, Paramount Pictures, was able to obtain 12 trademark registrations for similar goods. And so there's a distinct understanding in the public that there's a difference between a fictional law enforcement or, you know, entity like that entertainment show and the actual U.S. military. So I posit there that the public... It's a highly factual question. Yes. Right? Yeah. And I think it's borne out by the survey that was submitted with the appeal brief that showed that the public doesn't point to one particular entity, NASA, Trump, U.S. government. But didn't the board, the board found a couple problems with the survey. First, the board wasn't sure about the methodology. It was not explained, so it wasn't sure that it was a reliable survey. And then second, if I remember correctly, the board, I think, somewhat reasonably said at least three of those answers all pointed to the same thing, which is the U.S. government. And that was two-thirds of the respondents identified one of those three things that would have pointed to the U.S. government. So that seemed pretty reasonable. Yeah, and I would look at the law that requires... Do you think the board's finding was reasonable there? Well, I would say that we need to go back and look at the law, possibly, because under our new Supreme Court decision with Loper-Bright, we're supposed to be going back and see if the law... But that's different. That's not a statutory interpretation. Well, a statutory interpretation is you're asking about the survey. Was it a valid survey? Did the board rely upon it correctly? And I would say for an appellant, you know, applicant at the trademark office, they're not going to spend tens of thousands, you know, $20,000. Forget about the reliability. I think that Judge Stoll's other point was that the agency found as a factual matter that 65 or so percent of all the respondents still identified this U.S. Space Force with the United States in one way, shape, or form. Right. So how is it that that isn't enough? Are you saying... Is your argument that 65 percent of people who think the trademark's affiliated with the U.S. government isn't a high enough number? Or what is your problem with that high? I'd sort of step back again, looking at what happened in Top Gun. You know, you could have said that there had been a survey, and did Top Gun refer to the naval training for... It's so different. I mean, you can't... I'm sorry. No, I'm... It's a different factual scenario. And the factual scenario we have here involves U.S. Space Force. Right. I just see a difference for factually. So I'm not sure that referring to another case where there wasn't... where the statute was found not to be satisfying, there was no false suggestion, falsely suggesting that. Yeah, the circumstances surrounding it, yes. I mean, I don't even know if there was a case about that. No, I don't think so, because they were able to get their... Okay, so it's really not very helpful, to be honest. Well, it's indicative that trademarks can be identical to U.S. government agencies or entities and still be able to coexist without creating this kind of issue. But the question here is whether U.S. Space Force, whether the board's decision that U.S. Space Force falsely suggests a connection with the U.S. government military force, whether that's supported by substantial evidence, right? Right. And if you're relying upon this survey, that I think shows that it shows different... People aren't really clear on what NASA, agency, U.S. military, the government, and who. It's not like it points specifically to President Trump, which was originally claimed by the examining attorney. So we're looking at these three different entities, you know, President Trump, the U.S. government, and who. So your view is that it was unreasonable for the board to view those as being similar enough...  ...to show that there was a false connection. Right, it's not pointing to one particular person. Take, for instance, President Trump. Since he left, and he's certainly now back going to be president again, but once he leaves again, will he be known as Space Force? Will he have that entity ascribed to him, that moniker ascribed to him? I don't believe so. That's what the law is supposed to do. It's supposed to protect the public against being shocked and dismayed by these connections. As you go back and read... Who's being shocked and dismayed? No, they're supposed to prevent deception. Deception, yeah. And so the idea is, if you pass off goods with the trademark U.S. Space Force, is that going to confuse the purchaser into believing that those goods have an affiliation... ...with somebody other than your client in particular? This assuming that the government got the rights to the trademark just by President Trump speaking to them at this event. No, this doesn't require trademarks. False designation does that. He acquired an entity at that point. It became real. It was a nascent idea at his time. Some people took it as a joke. And six days later... I don't think it has to be real. I think that we're having a fundamental misunderstanding. Let me give you an example. We all know that President Trump has golf courses. Maybe we don't all know that, but I think I know that. President Trump has golf courses, right? Trump Golf Courses, whatever they're called. I don't believe, I could be wrong, but I don't believe President Trump has any tennis facilities. But if somebody tried to trademark Trump Tennis Facility... Yeah, that's his name. I think that the public would think that this is a facility owned by Trump. So it doesn't matter that there doesn't exist a Trump Tennis Facility. All that matters in the false association language is... ...will consumers be confused because they would think that is something else? Yeah, and I'll address that in two different ways. At the time the appellant applied, it gained tentative nationwide rights to the mark. At that time, there was no U.S. Space Force. It was an idea. There had been ideas about a Space Force and a Space Corps, but nobody had created this new government entity. In fact, it wasn't until 2019 that Congress authorized it. So it really, you know, President Trump was pointing to this future dream, this idea, and some people took it as a joke at that time. Whether it would have ever come into existence is sort of the question. Where does the statute say? It really just says you can't have a trademark that falsely suggests a connection with institutions. Where does it say anything about at the time of the filing or anything like that? Yeah, let's see. It doesn't say that. I recall that there was a case involving use. I'm trying to see if I can find it here. Let me just help. So the statute says no trademark shall be refused registration on account of it unless it. So we have to tether it to at the time of registration. But at the time of registration, the question is, it seems to me, would people think the U.S. Space Force is connected with the U.S. government? And I'm here to assuage you that it will not be used in that fashion. It may not be used in that fashion. In fact, there's still a remedy. After registration, the U.S. government can challenge it upon the same basis, false suggestion of a connection. And that goes on into the future. I don't understand. You're appealing their decision. You're either going to win or lose. Right. And I'm just trying to give you a context that there's a, even if you grant a, say, Tong appellant here, your trademark application can go on to be registered. The U.S. government still has a remedy at the end of the day. If confusion does arise. If, you know, the types of services provided here, it's a fictional law enforcement genre of a video game, movie, television series. It's not going to deal with military activities. It's not going to play up on military activities. It's going to be Space Force, Space Military Force, Space Race Force. The mark you're seeking to register is U.S. Space Force. Right. So here's the problem with your argument. You know what the FDA is, right? Food and Drug Administration. Let's say they don't sell T-shirts. I assume they don't. Let's say they don't sell video games. I assume they don't. But I might be wrong. I don't know. But you want to adopt the trademark or get the trademark for Food and Drug Administration as applied to video games. Don't you think it would be falsely connected with the FDA at that point? Or do you think, no, as a factual matter, it wouldn't be because the nature of the goods are different than what people think the FDA is? And the way they're presented. If it was tied in with an entertainment franchise, it was called FDA, food. I don't want to say food, drugs. Can I make a stupid question? I'm sorry, I don't remember this from your brief. Did you argue with specificity that the false designation question should also focus on the type of goods to which your mark is being applied? Yeah, and the trademark office has obviously pointed out that those are the same types of goods that are sold by the U.S. military. In other words, they franchise, they license out these same kind of goods. And I understand that. But, again, these are the same types of goods that a television show or a movie franchise would be looking to market on. And if it's trying to get investors interested in this kind of Western in-space endeavor, themed endeavor, they want to say, hey, can you license this? Can you create these T-shirts, mugs, things like that? Okay, well, you're into your rebuttal time. Do you want to save some so you can respond to the government? Yes, I'll save three minutes if I have that. Thank you. Mr. Springer. Good morning, Your Honors, and may it please the Court. Brian Springer on behalf of the government. I'd just like to take a step back and explain what the context of this case is. So here the board refused the registration of applicants' proposed U.S. Space Force trademark because it may falsely suggest a connection with the U.S. government's military forces. That determination was supported by substantial evidence, including the President's public announcement of the idea to form a new branch of the military called the Space Force, the extensive media coverage of the President's statements by several major news outlets, and the fact that the proposed mark itself uses the same naming convention as federal agencies in general and the military branches in particular. I'm happy to answer whatever questions the Court has about any of the specific evidence that's here in this case. Can you show me, you have argued in your brief, I think it's on roughly page 12, that we, our Court, has adopted a four-part test for how to determine whether a trademark fails Section 2A's falsely suggested connection with a person living or dead thing. Can you help me walk through where this four-part test came from? And, by the way, I have to tell you, I see it in lots of TTAB cases for sure, but I don't actually see any Court of ours that's ever articulated this four-part test. And you say it comes from our Court, and I don't see that, and I'm not positive that the test is right, and we'll talk about why. But can you tell me where you got the four-part test from? Senator, my understanding is that the four-part test was derived from this Court's 1983 decision involving the University of Notre Dame. Can you show me where in that case? Your Honor, I can't point you specifically to where. I think that— There is no four-part test in Notre Dame. There's not even anything that says there's four parts. None of these parts are mentioned anywhere in Notre Dame. Your Honor, I agree that Notre Dame doesn't describe the test as a four-part test. It does talk about some of these things, like, for example, the first factor, which is about whether there's a close enough match with a name or identity that's been used before. It also uses, I think, the phrase, you know, unmistakably point to another entity. I do agree that, you know, these factors do need to be interpreted in light of what the statutory language actually says, which is just asking whether or not there's a false suggestion of a connection with another person. But the Board has applied this test across a range of cases, and most recently in this Court's— I've got Notre Dame in front of me. You apparently don't have it. Does your co-counsel have it? Do you have the Notre Dame case with you? It's the case that you relied on throughout your brief, and you didn't bring it to court? I'm asking you a question. Your Honor, I don't have the case in front of me right now. Okay, so you relied on it throughout your brief, and you didn't bring it. Nowhere in it does it establish a four-part test, and the four parts that the TTAB has adopted claiming that they hearken back to this, I really just don't see any of the rhetoric even in this opinion that supports that this is a four-part test. Do you have the Piano Factory case with you? That's one of our cases that you also relied on. Sure. I don't have the case specifically in front of me. I do—it is the case that the Piano Factory case went through the four factors. It was another case where the Board had applied the four-part test, as it has across a range of cases, and the Piano Factory case walked through it. The Piano Factory is one of our cases. It's not a Board. That is correct, Your Honor. Okay, so in the Piano Factory case, it walks through what the Board did, but what it really does is to do it in a way where it says, in so doing, the Board found—I'm reading to you from the opinion, so you're not confused because you don't have it, and I do. In so doing, the Board found, one, that Suite 16's registered mark is effectively the same as the appellant's name and identity, that the registered mark points uniquely and unmistakably to the appellant, that the appellee is not connected with the activities. And it goes through four things. I'll grant you it goes through four things, and it sort of claims that these are sort of derived from Notre Dame, and it says that basically these are sufficient to establish what the Board established. What bothers me about the adoption that this is some rigid four-part test is a case of ours that says the Board has met its burden when it has shown these four facts. It's not the same thing as saying those four facts have to be shown in every case, right? Your Honor, I appreciate that, and it may be that the four-part test isn't right. I mean, here, the other side isn't disputing that the four-part test is what should be used, and the Board went through and found substantial evidence as to each of these pieces. It's a question of law. I have to analyze what does this statutory provision mean. Don't you think it's relevant to that analysis if I think the Board applied incorrect law in reaching that conclusion? Sure. The other side hasn't contested, hasn't suggested that the Board erred in applying this four-part test. Are you under the mistaken belief that they can either waive or somehow stipulate to legal questions? Your Honor, parties can waive legal arguments. And here, I think it's not necessary for the Court to decide whether or not this is the appropriate test in all circumstances. Instead, the question that's presented for the Court is whether substantial evidence supports each of the factors of this test. And because the Board has found that there's evidence supporting each of these factors, it's sufficient to sustain a false suggestion registration bar here. Okay. Let me tell you some of the stuff that I think is wrong with the test. So, for example, your test seems to suggest that there already has to be an entity in existence which has the same name. Let's go to my Trump tennis example. Because, quite frankly, to be clear with you, my concern isn't just that the TTAB is using the wrong test, but that the test should broadly preclude more things than the test that you've articulated does. So, to be clear, under my reading, you win. But what I'm concerned about is that the law actually clearly requires a different and broader preclusion of registration than what you've afforded by these factors. Your Honor, I think it's possible that that's true. I mean, again, I don't think that the Court needs to decide it here. I don't think that the test specifically says that an entity has to come into existence. And one thing I would flag is that often the way these issues arise, and I think the way that the test has kind of developed, is it's two competing commercial entities who are trying to use the same or similar marks. And so often, you know, some of the pieces and some of the factors that are present here might not look the same in a different case. And I would urge the Court to… Let's look at my Trump tennis example. Let's assume he does not have tennis facilities. I'm not positive, but let's assume he doesn't. Don't you think that that would fall within the false designation language of the statute? Because even though he is not using a mark and doesn't have an entity called Trump Tennis Facility, it would falsely imply, falsely designate, confuse consumers into believing that that tennis facility was being run by Donald Trump. Your Honor, it would depend on the evidence, but I think it could very well be the case that because it refers specifically to Donald Trump, it uses Donald Trump's name, that that would both satisfy the first two factors, but also would satisfy the language in the statute. I don't know, because one of your factors is the mark has to be as same as or a close approximation to the name previously used by another person or institution. And my concern there is Trump Tennis Facility is not almost identical to Donald Trump or Donald Trump Golf Course. My understanding is that the way that the board has applied this factor, even if sort of a piece of it is referring to somebody else, that can satisfy the first factor, and it does under that close approximation language. I don't think that's right. Tell me a case where you can say that. Tell me a case that says what you just said. Your Honor, I believe that there are board decisions involving U.S. entities. I mean, one, for example, I believe that the TTAB, or excuse me, that the board has decided is called Royal Kate, and so it's referring to Royal Kate within, you know, or Kate within sort of the context of a mark, and that that was held to create a false suggestion of a connection with another person. Your Honor, I don't understand. Can you give me a little more detail on that? Your Honor, my understanding was that the case involved, it referred to Royal Kate, and although, you know, that was referring to Kate kind of herself, and because of the fact that it said Royal Kate, it was shown that that was pointing to a specific person, even though, you know, that wasn't something that was sort of used out in the world necessarily beforehand. I mean, I confess that in the context of government entities, you know, this test may not look exactly the same as when it's being applied with respect to two commercial entities who are trying to use the same trademark or almost the same trademark, but here that's not what we're talking about. We're talking about the use of U.S. Space Force. It sounds like it has a false association with the United States government and its military forces. We haven't had many occasions to address this statutory provision, but the TTAB has had lots of occasions to do so, in which it's consistently applying what appears to me to be the wrong test, and I'll be honest. I actually went on the trademark register in the last two days to assess whether I think the TTAB, in light of this being the test they're using, is or is not granting registrations in fidelity to the statute. Did you know that they've allowed registrations on all kinds of things like, okay, Matt, what's the electrical one? U.S. electrical testing. U.S. electrical testing. If a man came to my door with a clipboard and said, I'm from the U.S. electrical testing agency, I assure you I would think he was from the U.S. government, wouldn't you? Your Honor, I think it would depend on the evidence that was presented. The board is required to examine each trademark on its own facts, and at the time that something comes up. I didn't ask you what the board would do. I asked you if a guy shows up at your door and he's got a clipboard and a uniform and says, I'm from the U.S. electrical testing facility. I'm here on important business. Would you assume he was from our United States government or not? Your Honor, I don't know what I would assume in that situation. I think it's possible that some people would assume that that has an association with the United States government, and that could pose a problem potentially, but, again, it would depend on the evidence. I don't know what you would assume. You're a person. You're standing in front of me. You can't tell me what you would think as a person. I understand that you are one human individual, and I'm not saying that what you personally think binds the U.S. government in some important way, but I feel like you can answer the question. Would you think he was from the U.S. government? Your Honor, I don't. I think it would depend on the context. I don't know that. Tell me what context you need. I'll flush out the hypothetical more. He's got a ban, says U.S. electrical facility. Actually, there's a flag on it because he's a gosh darn patriot. Your Honor, I think it's possible that me or anyone else in that situation could think that this has an association with the United States government. Here I don't think that the court needs to delve into that, because even if it just treats this test as being sufficient to meet the statutory question of whether there's a false suggestion of a connection with another person, we have substantial evidence in this record to support that determination, and we're talking specifically about U.S. Space Force that falsely points to the United States government having an association with applicants' products. Because most of what happened with the Space Force here, opposing counsel points out, occurred like it really coming into existence in any meaningful form after the date of registration. So I do think that the time at which it has to suggest, given that Section 2 expressly says a mock will be registered unless, don't you think it tethers the analysis under Section 2 to the time of registration? Your Honor, there could be two different times. It could be the time of application or the time of registration. The board here, as this case comes up to this court, the board said it didn't need to resolve that question one way or another, because under either timing, there was more than enough evidence to say that at the time, the public would associate this phrase, this name or identity with the U.S. government and have that exact deception or confusion that this registration bar is seeking to prevent. Let me ask you something. Registration is a fixed event, correct? You get registered. At some point, yes, if the registration is approved, yes. So suppose that U.S. Space Force didn't exist in any form. There was no Trump speech. There was nothing. And they come along and attempt to register U.S. Space Force. And you get their registration and you grant their registration. And a year later, Trump decides to create the U.S. Space Force and does. Do you believe under Section 2A you can cancel the registration at that point? I think, again, the board didn't specifically address what the right timing was here. It didn't find it necessary to resolve this case. And so we have litigated the case on the understanding. But here we have the U.S. Space Force today, so today this would be a very easy case. Do you have Section 2A in front of you? I do, Your Honor. Do you see how it begins? No trademark shall be refused registration unless. So looking at this statute, is it your belief that once you've granted a trademark registration, that Section A continues to allow the agency to make subsequent decisions about whether that registration, once granted, could continue to exist? Your Honor, I believe that trademark rights are, you know, it depends on the time at which things come up. And, for example, I believe that inherent distinctiveness or, you know, questions of whether there's been genericized or something that's assessed sort of after the fact, so there could be times where the rights change even after the registration. I'm a little confused, and I think this is possibly what the Chief is getting at as well. Why, if it's deception you're looking at, why do you need a U.S. Space Force to actually exist? Isn't the question you look at about whether if one saw somebody using U.S. Space Force, whether or not there's an official Space Force already created in operation, somebody would identify that as a government-created entity. So that's what I thought the test was, but it doesn't seem like your four-part test would allow for that. Your Honor, I think the four-part test does allow for that. I think you're exactly correct that there does not need to be a U.S. Space Force in existence at the time of the application or any other time for it to falsely suggest a connection with another person, because here the other person or institution that we're talking about is the United States government's military forces. And the phrase U.S. Space Force, you know, the proposed trademark here, falsely suggests a connection with the U.S. government, whether or not the entity, the Space Force, has fully come into existence or not. Well, do you appreciate that reading the analysis here, I understand you do as little as you have to do to get it affirmed in this case, but the Boies analysis and your analysis places a lot of emphasis on Trump having said it and it having been in operation, it suggests at least that that is a factor that you think is necessary or required under the four-factor test. And you agree here that it's not. Your Honor, the board did make some of those statements in its initial decision, but then on reconsideration it said even if you limit it to the time when the application was submitted, so at a time when the U.S. Space Force hadn't yet come into existence, the answer— they seem to rely heavily on the speech, not to say it doesn't matter at all. It's still deceptively a government-associated entity. Your Honor, here that's correct. The board here didn't have to pick and choose kind of particular pieces of evidence because it had overwhelming evidence in front of it that showed that this name would be, you know, falsely associated with the U.S. government, including the president's speech, including the ensuing media coverage that used the term Space Force in headlines and in the articles. How many of those items occurred prior to the application date here, as opposed to the registration date? So in the record—and this is, you know, a representative sample that the examiner found— there's four articles that are from major news sources. There's also the Trump speech that was put out in the world. I mean, I would note that the applicant itself said that it heard Trump's speech and then went out and applied for registration. And so that was prior to the application? That was prior to the application, yes, Your Honor. It was like a three-day period. Yeah, it was a very short period. We're right that Donald Trump made his speech, I believe, on March 13th. And March 13th and 14th, there were a series, you know, a flurry of news articles that talked about the president of the United States' statements and specifically about the Space Force. And then the application didn't come until March 19th, several days later. Where does your friend get the suggestion that everybody thought it was a joke? Your Honor, the president's speech, in the speech, he says that he had previously suggested it was a joke, but he had come around to the idea that he thought that this was a serious thing and because the United States was already spending a lot of money on space operations that it was something that should, you know, he endorsed. I guess I'm still baffled as to why you will not acknowledge that Section 1052 only applies to marks upon registration and that the government doesn't have the right to cancel marks under Section 1052. I'm not saying there aren't other sections, that the government doesn't have a right to cancel marks or refuse registration of marks already registered because they later in time become associated with someone. So, Your Honor, the only reason I have any hesitation is just that this specific issue hasn't been briefed here. Of course, there are cancellation and opposition proceedings that can happen down the road where a trademark can be. This is the statute at issue. And one of the questions that was raised here throughout this briefing, throughout the case of the board, was the time at which we should be measuring for these associations. So, you should be prepared to address that question. Your Honor, the reason that I don't want to get out ahead of the board because what the board said here is that it didn't need to resolve the issue. It recognized that there were arguments on both sides and it said it didn't need to resolve the issue because regardless of which time you pick, it would still be the case that there was a false association, whether you were using the application date or using the actual registration date, and that the board would leave it for a time, a case where it actually changed the outcome to resolve what is a complex issue that requires understanding the interaction of multiple trademark provisions. But my question to you wasn't even just whether or not you have to look at the application date or the registration date, but whether or not the PTO thinks it can apply these provisions even after the registration date to somehow affect a trademark. Your Honor, again, I mean, that issue wasn't specifically briefed or presented here, and I don't... Section 1052, I mean, it does say, no trademark shall be refused registration unless, and then it lists things, so... Maybe there's a different statutory provision that talks about cancellation and opposition under different grounds, but if the question is simply whether under Section 1052 it's limited to registration, I don't see how you argue something different. Your Honor, yeah, I don't know the answer off the top of my head. I believe Piano Factory was an example of a case where a trademark had been registered, and it was a cancellation proceeding, and the way that Piano Factory described it was looking at the time of registration. I don't know off the top of my head whether or not the answer would be different when you're talking about sort of later developed facts in that resonant issue that was presented in this case. Okay. If there are no other questions. Thank you. I'd like to address some of the issues raised by counsel. First off, I believe that the rule is that trademark rights are acquired at the time... Tentative rights are acquired at the time of filing the application, so that starts a clock in that kind of thing. And also as to issues of previous registrations of U.S. Space Force, there have been numerous ones. I believe that they're cited in the appeal brief for various kind of goods and services without creating confusion, obviously, or false suggestion of a connection with the U.S. government. They're for educational services, things like that. You know, groups, people are banding together to teach kids about space activities. And then I'd also want to point out that you've questioned about the test that's presented here and relied upon by the board. I would just say the underlying law is vague. You know, we've got an issue here where artists are questioning, you know, why be able to use this mark in a fictional way to present a show that's entertaining or educational without getting, you know, without being able to obtain a trademark registration when it's necessary for funding for the whole endeavor. And I just certainly look forward to further questions that you might have in this regard. Thank you very much for your time. We thank both counsel for their arguments. The case is taken under submission.